UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE DISPUTE OVER
DISTRIBUTION OF THE ASSETS OF
THE ESTATE OF MILDRED ASH

15-CV-8644 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Jon Edelman owes the United States government over $334 million in delinquent taxes. In an effort to recoup some of what it is owed, the United States sought to recover against Jon's share of the estate of Jon's late mother, Mildred Ash. Facing opposite demands by the Edelman Trust (of which Jon is a beneficiary) to distribute Estate assets and by the United States to refrain from distributing those same funds, the executor of Ash's Estate, Jon's brother Asher Edelman, filed a petition seeking advice from the Surrogate's Court of the State of New York. The United States removed the case to federal court.

This case would be generously characterized as "complex"—and perhaps more accurately described as a Gordian knot. The parties have come close to finalizing a settlement, but there is a fly in the ointment: In the fall of 2017, Jon filed a Cross-claim alleging that Asher and the trustee of the Edelman Trust, Peter Lazare, engaged in a conspiracy to defraud the Edelman Trust. Jon also moved to preliminarily enjoin the proposed settlement. Both Asher and Lazare opposed the motion for an injunction, Asher moved to dismiss the Cross-claim, and Lazare moved for summary judgment. For the reasons that follow, Jon's motion for a preliminary injunction is denied, and Asher's and Lazare's motions against the Cross-claim are granted.

I.  **Background**

The story of this case begins in 1991, when Jon Edelman was convicted of federal income tax fraud and conspiracy to defraud the United States. (Dkt. No. 1 ¶ 3.) The United States subsequently obtained judgments against Jon totaling more than $334.8 million, but thus far it has collected less than $30,000 of that sum. (*Id.*)

One of the government's targets for collection is the Edelman Trust, which was created in 1996 by Jon's mother, Mildred Ash, for the benefit of Jon and his three children. (Dkt. No. 1 ¶ 2.) Ash passed away in 2004, survived by her two sons: Asher Edelman, who would become executor of her estate, and Jon Edelman. Ash left half of her Estate (the "B Portion") to a trust benefiting Asher's children and the other half (the "A Portion") to the Edelman Trust. (*Id.*)

In March 2015, the Estate sold its primary asset, real property in Las Vegas, for over $9 million. (Dkt. No. 1 ¶ 7.) Asher avers that once those proceeds are distributed, he will be able to close the Estate. (Dkt. No. 2-1 ¶ 13.) Shortly after the sale, however, Asher received notice from the United States Department of Justice warning him that, based on the federal tax liens and judgments against Jon, he could face personal liability for transferring any Estate assets into the Edelman Trust. (Dkt. No. 1 ¶ 8.) Near the same time, Asher received a communication from Peter Lazare, trustee of the Edelman Trust, demanding immediate distribution of the A Portion to the Trust.[1] (Dkt. No. 2-1 ¶ 20.) Caught between the rock of potential personal liability and the hard place of his fiduciary duties as executor, Asher filed a petition for advice and direction in

---

[1] At the time, Lazare demanded distribution to the Aurora Borealis Trust—a trust which Lazare himself had created under the laws of Nevada sometime before November 2013. (Dkt. No. 1 ¶ 5.) Lazare had attempted to decant the Edelman Trust's beneficial interest in the Estate to the new trust (*id.*), but the United States District Court for the District of Nevada subsequently ruled that the decanting was a fraudulent transfer and set it aside, *see United States of America v. Lazare*, No. 14 Civ. 1075, Dkt. No. 66 (D. Nev. Apr. 4, 2016).

New York Surrogate's Court, naming both Lazare and the U.S. Department of Justice as interested parties. (Dkt. No. 1 ¶ 1.)

In November 2015, the United States removed this case, styled as an interpleader action, to federal court pursuant to 28 U.S.C. §§ 1442(a)(1), 1444, and 2140. (Dkt. No. 1 ¶ 13.) The United States "only remove[d] the . . . interpleader dispute presented in [Asher's] Petition, which concerns the United States' judgments against Jon and the Edelman Trust"; it did not remove "the underlying probate proceeding or the possession of the *res* of the Estate," which remain in New York Surrogate's Court. (Dkt. No. 1 ¶ 12.) Jon Edelman was not a party to the original interpleader action in federal court (*see* Dkt. No. 15), which included only the United States, Asher, and the relevant trustees.[2] However, the United States later amended its answer and added Jon and his three children as third-party defendants. (Dkt. No. 21.)

Many motions and two settlement conferences later, in August 2016, the parties reported that they had successfully negotiated a proposed settlement that would have allowed both the United States and Jon's children to keep a portion of the Estate. (Dkt. No. 116.) (Given the government's substantial judgments against Jon, the proposed settlement would not apportion any money to Jon himself.) The Court stayed discovery while Asher, Lazare, and the government worked to iron out the details of the tripartite agreement. (*See* Dkt. Nos. 122, 126, 133, 135.) In August 2017, counsel for the government reported that the parties had prepared a

---

[2] The Aurora Borealis Trust, and its trustee, Ian Williams, were also parties to this interpleader action. (*See* Dkt. No. 15.) Williams had filed his own petition in New York Surrogate's Court in October 2015, and the government removed his case shortly after removing Asher's. (*See* 15 Civ. 8800, Dkt. No. 1.) Williams' case was consolidated with Asher's under the master docket number 15 Civ. 8644. (*See* Dkt. No. 94.) The Court subsequently dismissed Williams' claim for failure to prosecute. (*See* Dkt. No. 134.)

3

draft stipulation of settlement and that there was only "one outstanding issue remaining to resolve." (Dkt. No. 135 at 1.)

The nature of that final outstanding issue soon became clear. In September 2017, Jon Edelman filed a *pro se* Cross-claim against Asher and Lazare,[3] alleging that they "have conspired to defraud the Edelman Trust by malfeasance, self-dealing, . . . and gross negligence." (Dkt. No. 138 ¶ 1.) According to Jon, his brother Asher has committed a series of misdeeds in his role as executor, including: electing a five-year deferral and ten-year installment plan for paying estate taxes (Dkt. No. 138 ¶¶ 19−20); borrowing $1,500,000 for the stated purpose of paying estate taxes but instead using the funds for his personal benefit (Dkt. No. 138 ¶¶ 21−27); fraudulently transferring estate assets to himself and third-parties (Dkt. No. 138 ¶¶ 28−29); charging excessive executor fees (Dkt. No. 138 ¶¶ 30, 47); and incorrectly undervaluing the A Portion of the Estate (Dkt. No. 138 ¶ 32).[4]

Jon alleges that Lazare conspired with Asher in these actions or, alternatively, that he was grossly negligent in his failure to protect the Trust's interests. Jon describes Lazare's alleged conspiratorial acts as follows: In 2010, in his capacity as trustee of the Edelman Trust, Lazare waived the requirement that Asher provide an annual accounting of the Estate. (Dkt. No. 138 ¶¶ 13, 35, 39.) In 2015, Jon provided Lazare "evidence" of Asher's "malfeasance and self-dealing," but Lazare took no action. (Dkt. No. 138 ¶ 16.) Jon further alleges that, since the inception of this litigation, Lazare has "agreed to limited discovery produced by the Estate that

---

[3] Where interpretation of the Cross-claim is necessary, this Court follows the directive that "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[4] In his motion for a preliminary injunction, Jon also alleges that Asher loaned Estate funds to an art dealer to facilitate Asher's sale of a seven-million-dollar painting. (Dkt. No. 143 ¶¶ 23, 50.)

does not include activities prior to the sale" of the Nevada real property, and Lazare has refused to share that discovery with Jon. (Dkt. No. 138 ¶¶ 17, 18.) Finally, Jon alleges on information and belief that in the draft settlement agreement—which Jon has not seen—Lazare has agreed to waive a final accounting of the Estate (Dkt. No. 138 ¶¶ 14, 35) and to release Asher from any legal claims the Trust may have against him (Dkt. No. 138 ¶¶ 31, 51).

In terms of remedies, the Cross-claim requests three forms of relief: (1) monetary damages from Asher and Lazare (Dkt. No. 138 ¶¶ 36, 48, 56); (2) a "compulsory accounting of the Estate of Mildred Ash," including production of "all Estate documents [created] since inception" (Dkt. No. 138 ¶¶ 40, 44); and (3) an injunction preventing consummation of the proposed settlement (Dkt. No. 138 ¶ 53). Shortly after filing his Cross-claim, Jon also moved for a preliminary injunction prohibiting Lazare and Asher from negotiating or finalizing the proposed settlement and enjoining Asher from distributing, lending, or otherwise expending Estate assets. (*See* Dkt. No. 142; Dkt. No. 143 ¶¶ 1, 55.)

Asher now moves to dismiss the Cross-claim (Dkt. No. 146), and Lazare moves for summary judgment (Dkt. No. 170).

## II.  Legal Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, courts "must accept as true all of the factual allegations contained in the complaint," *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)), and must "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "However, '[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to

dismiss.'" *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (alteration in original) (quoting *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)).

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" at which point the burden shifts to the opposing party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). However, "[w]hile all factual ambiguities must be resolved in favor of the nonmoving party, 'the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation.'" *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

**III. Discussion**

    **A.**     **The Probate Exception to Federal Jurisdiction**

The Supreme Court has long recognized a "probate exception" under which "'probate matters' are excepted from the scope of federal diversity jurisdiction."[5] *Lefkowitz v. Bank of*

---

[5] Although interpleader actions present some complexities in terms of arranging adverse parties on either side of the "*v.*," Jon's Cross-claim is most appropriately characterized as a claim by Jon against Defendants Asher and Lazare. Jon alleges that this Court has diversity jurisdiction over his Cross-claim pursuant to 28 U.S.C. § 1332. (Dkt. No. 138 ¶ 2.) Construing

6

*New York*, 528 F.3d 102, 105 (2d Cir. 2007).  Because this case arises out of a state surrogate's court proceeding, it is incumbent upon the Court to ensure that subject matter jurisdiction is proper before proceeding to the merits of the instant motions.

"[T]he probate exception 'reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.'"  *Id.* (quoting *Marshall v. Marshall*, 547 U.S. 293, 311−12 (2006)).  The Second Circuit recently narrowed the test for whether a matter falls within the probate exception:  "[A] federal court should decline subject-matter jurisdiction only if a plaintiff seeks" either to "(1) 'administ[er] an estate, . . . probate . . . a will, or [do] any other *purely* probate matter,'" or "(2) 'to reach a res in the custody of a state court.'"  *Id.* (alterations in original) (quoting *Marshall*, 547 U.S. at 312).  Notably, "[t]he probate exception can no longer be used to dismiss 'widely recognized tort[s]' such as breach of fiduciary duty or fraudulent misrepresentation merely because the issues intertwine with claims proceeding in state court."  *Id.* at 108 (alteration in original) (quoting *Marshall*, 547 U.S. at 312).

Consequently, this Court exercises jurisdiction over most—but not all—of Jon's claims.  On the one hand, the probate exception does not deprive this Court of jurisdiction over any of Jon's *in personam* claims against Asher or Lazare for fraud, breach of fiduciary duty, or conspiracy.  *See id.* at 107−08 (holding that the lower court had jurisdiction over "*in personam* claims" seeking "damages from Defendants personally rather than assets or distributions from

---

Jon's *pro se* filing liberally, the Court interprets the Cross-claim's citation to § 1332 as an allegation that the parties are completely diverse.  Indeed, Asher's Surrogate's Court petition indicates that he and Lazare both reside in New York, while Jon resides in California.  (*See* Dkt. No. 2-1 at 1 & ¶ 26.)  Therefore, the Court concludes it may exercise diversity subject matter jurisdiction over the Cross-claim.

7

either estate"). On the other hand, "[b]ecause a federal court may neither 'dispose of property that is in the custody of a state probate court,' nor take over the administration of estate assets pending in probate courts," *id.* at 107 (quoting *Marshall*, 547 U.S. at 312), this Court does not have jurisdiction to grant declaratory or injunctive relief relating to administration of the Estate itself. Therefore, to the extent that Jon's Cross-claim requests that this Court conduct or order a final accounting of the Estate, or that it enjoin the disposition of Estate assets, those claims are dismissed for lack of jurisdiction.

B. **Jon's Claims Against Lazare**

Jon's Cross-claim can be read to allege two causes of action against Lazare: (1) conspiracy to defraud the Edelman Trust, and (2) breach of fiduciary duty (either intentionally or via gross negligence).[6] Despite labeling Lazare a co-conspirator and fraudster, the Cross-claim alleges no affirmative malfeasance by Lazare. Instead, Jon alleges the absence of action where, in his opinion, the trustee should have acted. In particular, the sum total of the Cross-claim's allegations of misconduct are as follows: (1) Lazare waived an annual accounting of the Estate in 2010; (2) Lazare has declined to bring suit on behalf of the Trust against Asher; (3) Lazare intends to release Asher from any claims the Trust may have against him; and (4) Lazare intends to waive a final accounting of the Estate at such time as the Estate is closed.

None of these allegations states a claim for either conspiracy to defraud or breach of fiduciary duty, for one simple reason: The Trust Agreement explicitly permits Lazare to take (or not take) every action that Jon alleges to be tortious. Article IV of the Trust Agreement for the

---

[6] Because the situs of the Edelman Trust was moved to Nevada in 2013 (*see* Dkt. No. 175 ¶ 11), the parties dispute whether Nevada law or New York law applies to Jon's claims against Lazare. The Court need not resolve this question, however, because Jon's claims fail under either state's law.

8

Edelman Trust lists "powers which may be executed as the Trustee may deem necessary or advisable and without authorization by any court." (Dkt. No. 176-2 art. IV.) Among these powers is the authority "[t]o renew, assign, alter, extend, subordinate, compromise, [or] release with or without consideration . . . obligations or claims held by or asserted against the Trustee or which affect trust assets." (Dkt. No. 176-2 art. IV(E).) Indeed, in his opposition brief, Jon concedes that Lazare "has the legal right to waive an annual accounting" and "the legal right to give a release to Asher." (Dkt. No. 172 ¶¶ 68, 71.)

To be sure, compliance with a trust agreement does not necessarily immunize a trustee from suit for breach of fiduciary duty or fraud. The Court can hypothesize scenarios under which Lazare could have violated his fiduciary duties or acted fraudulently in his exercise of discretion—say, for example, if Lazare had taken a bribe in exchange for granting a release of claims. But Jon's Cross-claim is devoid of any allegation that Lazare acted improperly in the exercise of his discretionary authority.[7] Instead, the Cross-claim amounts to an allegation that Jon disagrees with Lazare's decisions. A difference of opinion is neither a breach of fiduciary duty nor fraud on the Trust.

Given the unambiguous language of the Trust Agreement and Jon's admissions, there can be no genuine dispute that Lazare has the discretion to waive annual accountings, to decline to

---

[7] Jon argues that Lazare's motion for summary judgment is premature because Jon has not yet had the ability to conduct discovery into Asher and Lazare's alleged conspiracy to defraud the Trust. (*See* Dkt. No. 172 ¶ 62; Dkt. No. 172-3 ¶¶ 6, 8.) But the Cross-claim contains precisely zero allegations of fraudulent conduct on Lazare's part—save for conclusory statements that could not withstand a motion to dismiss. Jon has not questioned the authenticity of the Trust Agreement, which, as Jon concedes, grants Lazare the discretion he has exercised. Therefore, the Court concludes that Jon has failed to demonstrate by "affidavit or declaration that," absent discovery, "[he] cannot present facts essential to justify [his] opposition" to the motion for summary judgment. Fed. R. Civ. P. 56(d). The motion for summary judgment is not premature.

bring suit against Asher, to grant Asher a release of claims, and to waive a final accounting of the estate,[8] all "with or without consideration." (Dkt. No. 176-2 art. IV(E).) And this Court need not credit Jon's "conclusory allegations [and] unsubstantiated speculation" that something more nefarious has occurred than a trustee exercising his lawful discretion. *Scotto*, 143 F.3d at 114. Therefore, the Court grants summary judgment for Lazare on Jon's Cross-claim.

### C.    Jon's Claims Against Asher

Jon's Cross-claim alleges that Asher has engaged in malfeasance in administering the Ash Estate and, as a result, has defrauded the Edelman Trust. Jon purports to assert his Cross-claim either on his own behalf or "for the benefit of the Edelman Trust." (Dkt. No. 138 ¶ 48.)

Neither theory of standing passes muster. First, Jon is not himself a beneficiary of the Ash Estate; instead, the Edelman Trust is a beneficiary of the Estate, and Jon is a beneficiary of the Edelman Trust. (*See* Dkt. No. 138 ¶ 10 ("Neither Jon Edelman nor Asher Edelman was named [a] beneficiar[y] of the Estate.").) Because Jon is not a beneficiary of the Estate, he does not have standing to bring claims *on his own behalf* against Asher. *Cf. In re Estate of Vaughn*, 700 N.Y.S.2d 271, 272 (App. Div. 3d Dep't 1999) ("A person who has no interest in the estate lacks standing to object to the executor's final accounts.").

Second, as a beneficiary of the Trust, Jon cannot bring suit *on behalf of the Trust* except in very limited circumstances. It is a basic principle of trust law that "[w]here the trustee could maintain an action . . . against a third person . . . , the beneficiary cannot maintain a suit in equity against the third person, except" when "the trustee improperly refuses or neglects to bring an

---

[8]    Whether New York requires a final accounting as a matter of *probate* law is a separate inquiry—and one not within this Court's subject-matter jurisdiction. As a matter of *tort* law, however, Jon has failed to demonstrate a genuine dispute over Lazare's fiduciary duty to demand a final accounting.

action." *Restatement (Second) of Trusts* § 282 (1959); *see also Velez v. Feinstein*, 451 N.Y.S.2d 110, 114 (App. Div. 1st Dep't 1982) ("Where a claim exists in favor of the trust . . . against third persons and the trustees are under a duty to enforce that claim and have improperly and unjustifiably failed to do so, the beneficiaries may bring a suit on behalf of the trust . . . .").[9] Demonstrating "why the beneficiary should be entitled to bring a suit on behalf of the trustee 'will normally require either a showing of a demand on the trustee[] to bring the suit, and of a refusal so unjustifiable as to constitute an abuse of the trustee's discretion, or a showing that suit should be brought and that because of the trustee['s] conflict of interest, or some other reason, it is futile to make such a demand.'" *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 477 (S.D.N.Y. 2010) (alterations in original) (quoting *Velez*, 451 N.Y.S.2d at 115).

Because the Court has already granted summary judgment as to Lazare's liability, it is now law of the case that Lazare did not breach a fiduciary duty in failing to bring suit against Asher.[10] Consequently, the Cross-claim cannot plausibly allege that Lazare's refusal to bring suit was "so unjustifiable as to constitute an abuse of the trustee's discretion." *CFIP Master Fund, Ltd.*, 738 F. Supp. 2d at 477 (quoting *Velez*, 451 N.Y.S.2d at 115). Jon therefore cannot usurp Lazare's discretion to bring—or not to bring—suit on the Trust's behalf.

Because Jon does not have standing to bring suit either in his own capacity or on behalf of the Trust, the Court grants Asher's motion to dismiss the Cross-claim.

---

[9] Because the Estate is located in the state of New York and both Jon and Asher direct their briefing to New York law, the Court applies New York law to Jon's claim against Asher.

[10] The Cross-claim could also be read to assert a claim against Asher not for his actions as executor—actions which Jon has no standing to challenge—but rather for Asher's role as a co-conspirator in *Lazare's* wrongdoing. To the extent the Cross-claim makes such an assertion, it is dismissed for failure to state a claim upon which relief can be granted: As previously noted, this Court has granted summary judgment in favor of Lazare.

### D. Jon's Motion for a Preliminary Injunction

To grant a preliminary injunction, a court must conclude that the movant has either demonstrated a "likelihood of success on the merits" or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *It's a New 10, LLC v. Harmon Stores, Inc.*, No. 17 Civ. 4231, 2017 WL 3208611, at *2 (S.D.N.Y. July 28, 2017) (quoting *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012)). Jon's motion for preliminary injunctive relief is premised on the likelihood of success of his Cross-claim. (Dkt. No. 143 at 7−9.) Having dismissed or granted summary judgment against all of Jon's claims, the Court denies Jon's motion for a preliminary injunction for lack of merit.[11]

## IV. Conclusion

For the foregoing reasons, Jon's motion for a preliminary injunction is DENIED, Lazare's motion for summary judgment is GRANTED, and Asher's motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 142, 143, 146, 147, 148, 155, and 170.

SO ORDERED.

Dated: May 17, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*

---

[11] Lazare's motion for expedited discovery and consolidation of the motion for a preliminary injunction with a trial on the merits is therefore DENIED as moot.

12